AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)        ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT



**LODGED**
CLERK, U.S. DISTRICT COURT

**8/12/25**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MRV _____ DEPUTY

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT

**08/12/2025**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ KL _____ DEPUTY

|  |  |
|---|---|
| United States of America<br><br>v.<br><br>LUIS FERNANDO ALCAZAR-ALFARO,<br><br>Defendant. | Case No.  2:25-mj-04960-DUTY |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of June 3, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(5) | Alien in Possession of a Firearm |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Norman Early, DHS Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        August 12, 2025

*alicia G. Rosenberg*
*Judge's signature*

City and state:   Los Angeles, California        Hon. Alicia G. Rosenberg, U.S. Magistrate Judge
*Printed name and title*

AUSA: Mirelle Raza x6058

## AFFIDAVIT

I, Norman Early, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for Luis Fernando ALCAZAR-ALFARO ("ALCAZAR-ALFARO") for a violation of 18 U.S.C. § 922(g)(5): Alien in Possession of a Firearm and Ammunition.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") in Los Angeles, California, and I have been so employed since November 2023. I am currently assigned to the HSI Integrated Operations Group Task Force ("Task Force"). As part of this Task Force, I investigate various immigration crimes with DHS agents and analysts, including HSI and ICE. As a result of my

collaboration with these DHS employees on this Task Force, I am familiar with DHS databases that are used to identify individuals who are subject to prosecution for immigration crimes. I previously served as a Deportation Officer ("DO") with ICE, Enforcement and Removal Operations ("ERO") in Los Angeles, California from September 2020 until November 2023.

### III. TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES

4.    Based on my training and experience, and communication with DHS employees on the Task Force, I know the following:

a.    Every person has a unique set of fingerprints.  I also know that unique identification numbers – including, but not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigations ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement databases from another person's fingerprints.  In many cases, the Department of Homeland Security ("DHS") and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

b.    Moreover, when a person is fingerprinted by DHS agencies, such as ICE, those unique fingerprint identifiers are associated with an individual's unique alien number ("A-number") and alien file ("A-file").  An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage.  That A-file is maintained in DHS custody, and documents and information from that A-file

are uploaded to official DHS databases that can be accessed to determine, among other things, whether a person has been removed or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted into the United States, pursuant to, for example, a non-immigrant visa.

c.    Generally, after an arrest for a criminal offense, a person's biometric fingerprint information is obtained and enrolled into a nationwide repository for criminal history records as part of a normal booking process.  That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is searchable within various law enforcement indices and comparable with other government records, including those belonging to DHS and those associated with an A-file and A-number.  A match between fingerprint identifiers can therefore be used to confirm the identity of a person associated with specific records, including immigration records indicating whether that person is amenable to immigration enforcement action.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

**A.    LASD Discovers a Firearm Near ALCAZAR-ALFARO During Execution of Search Warrant**

5.    On June 3, 2025, at approximately 5:00a.m., LASD executed a search warrant at the residence of 4947 W Lennox Boulevard in Lennox, CA 90304. Upon entering the residence, LASD found ALCAZAR-ALFARO on the west side of the property kneeling

near an open window with the blinds raised. Defendant initially ignored verbal commands to put his hands up, keeping his hands which were in his pockets. ALCAZAR-ALFARO eventually complied and was detained.

6.    After the detention of ALCAZAR-ALFARO, and six other suspects, LASD found a silver toolbox near the location where ALCAZAR-ALFARO was detained. The silver toolbox was located within arm's reach of ALCAZAR-ALFARO during the encounter. A black Springfield Armory, XD-45 4.0 ACP, semiautomatic pistol bearing serial number GM465406, was recovered inside the silver toolbox. LASD noted that the firearm was at the top of the toolbox and was not dirty or covered in dust. ALCAZAR-ALFARO was placed under arrest and charged with Convicted Felon in Possession of a Firearm, in violation of California Penal Code section 29800(a)(1).

**B.    LASD Interviews ALCAZAR-ALFARO**

7.    Later in the day, on July 3, 2025, ALCAZAR-ALFARO was interviewed while in custody at the LASD South Los Angeles Station Jail. Investigators Mirandized and questioned ALCAZAR-ALFARO about his relation to the firearm recovered inside the silver toolbox. Defendant admitted to jumping out of the bathroom window upon forced entry by LASD. When questioned about the firearm that was discovered inside the silver toolbox, ALCAZAR-ALFARO stated that he did not place the firearm in the toolbox and that he did not know what firearm investigators were referring to. Defendant stated that he did not know if anyone else jumped out of the window with him.

**C.    ICE is Notified about ALCAZAR-ALFARO's Arrest**

8.    On or about July 3, 2025, the ICE Pacific Enforcement Response Center ("PERC") – an ICE center responsible for vetting and researching the arrests of suspected foreign nationals – received an electronic notification based on ALCAZAR-ALFARO's biometric fingerprint information that he was arrested by the Los Angeles County Sheriff's Department ("LASD"), within the Central District of California, for Convicted Felon in Possession of a Firearm, in violation of California Penal Code section 29800(a)(1).

9.    ALCAZAR-ALFARO is currently in the custody of LASD. Based on my training and experience, it is essential to act quickly and secure a federal arrest warrant for ALCAZAR-ALFARO while he is in a custodial setting because once ALCAZAR-ALFARO is released from custody, he may abscond or evade apprehension, particularly in light of his immigration status.  Effectuating an arrest while ALCAZAR-ALFARO is in custody is materially safer for officers and ALCAZAR-ALFARO and presents a significantly lower risk of flight or resistance.  Arrests in a controlled environment also reduce the need for high-risk operations in the community and minimize potential harm to the public.  In addition, I am aware of at least nine addresses associated with ALCAZAR-ALFARO, further complicating law enforcement's ability to locate ALCAZAR-ALFARO, should he be released.

10.    I compared a unique fingerprint identifier from the arrest referenced above against those contained in immigration records retained for ALCAZAR-ALFARO in DHS indices.  I have

determined that these unique fingerprint identifiers are the same and therefore believe that both sets of records reference ALCAZAR-ALFARO, who is a previously removed alien.

**D.   ALCAZAR-ALFARO is a Previously Removed Alien and a Convicted Felon**

11.  On or about July 07, 2025, I conferred with other law enforcement officers, including DHS personnel, and reviewed records associated to ALCAZAR-ALFARO's unique fingerprint identifier that are contained in DHS indices.  I learned the following about ALCAZAR-ALFARO's immigration history:

12.  ALCAZAR-ALFARO is a citizen and national of Mexico.

13.  On or about August 8, 2005, the United States Border Patrol ("BP") made contact with ALCAZAR-ALFARO at or near Otay Mesa, California, as ALCAZAR-ALFARO was attempting to illegally enter the United States. When BP agents encounter a subject that they suspect of being unlawfully present in the United States, they ask routine questions to determine alienage to include but not limited to: country of citizenship, place of birth, and subjects current immigration status. Based on this encounter, BP agents determined that ALCAZAR-ALFARO was a citizen and national of Mexico with no lawful status or right to remain in the United States. On this same day, BP granted ALCAZAR-ALFARO Voluntary Departure in lieu of deportation and he returned to Mexico.

14.  On or about May 1, 2023, DOs with ICE made contact with ALCAZAR-ALFARO while he was imprisoned at Avenal State Prison ("ASP") in Avenal, California. Defendant agreed to

participate in a consensual interview with DO Alejandro Parra Jaimes. ALCAZAR-ALFARO stated the following:

      a.   He is a citizen and national of Mexico and was born in San Mora, Michoacan, Mexico on February 28, 1988.

      b.   He illegally entered the United States through the Tijuana Border.

15. Based on this encounter, ERO DOs determined that ALCAZAR-ALFARO was a citizen and national of Mexico with no lawful status or right to remain in the United States.

16. On May 4, 2023, ERO granted ALCAZAR-ALFARO Voluntary Departure in lieu of deportation and he returned to Mexico on May 5, 2023.

17. I reviewed photographs of ALCAZAR-ALFARO that were retained in DHS indices from ALCAZAR-ALFARO's immigration records. I also reviewed photographs taken of ALCAZAR-ALFARO following his arrest on June 03, 2025, for which the PERC received notification as referenced above. Based on my review, I believe that all of the photographs are ALCAZAR-ALFARO.

18. On or about October 28, 2019, ALCAZAR-ALFARO was convicted in the California Superior Court, County of Riverside, for the offense of Dissuading or Intimidating a Witness or Victim, in violation of California Penal Code section 136.1(B)(1), a felony. On the same date, ALCAZAR-ALFARO was convicted for the offense of Domestic Battery, in violation of California Penal Code section 243(E)(1), a misdemeanor. For these offenses, ALCAZAR-ALFARO was sentenced to 36 months of probation and 6 months in jail.

19.  On or about November 10, 2021, ALCAZAR-ALFARO was convicted in the California Superior Court, County of Los Angeles, for the offense of Convicted Felon in Possession of a Firearm, in violation of California Penal Code section 29800(A)(1), a felony, for which ALCAZAR-ALFARO was sentenced to three years in prison.

**E.    Interstate Nexus**

20.  On or about July 30, 2025, ATF Special Agent Monica Lozano provided a report stating that the Springfield Armory, XD-45 4.0 ACP, semi-automatic pistol, bearing serial number GM465406, as well as the ten rounds of .45 Auto ammunition were not manufactured in the state of California. Accordingly, I believe there is probable cause that the firearm and ammunition traveled in and affected interstate commerce.

**V.    CONCLUSION**

21.  For all of the reasons described above, there is probable cause to believe that ALCAZAR-ALFARO has committed a violation of 18 U.S.C. § 922(g)(5): Alien in Possession of a Firearm and ammunition.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 12th day of
August, 2025.

_____
HONORABLE ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE